[No. 73857-2. En Banc.]
Argued February 12, 2004. Decided June 10, 2004.

*In the Matter of the Personal Restraint of* LINCOLN LANE ADDLEMAN, JR., *Petitioner.*

*David Zuckerman,* for petitioner.

*Christine O. Gregoire, Attorney General,* and *Donna H. Mullen* and *Gregory J. Rosen, Assistants,* for respondent.

*Suzanne L. Elliott* and *Leta J. Schattauer* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

CHAMBERS, J. — In 1979, Lincoln Lane Addleman, Jr. pleaded guilty to one count of first degree statutory rape of a friend's child. *In re Pers. Restraint of Addleman*, 139 Wn.2d 751, 752, 991 P.2d 1123 (2000) (*Addleman* II). In accordance with the law of the time, he was given a maximum life sentence by the trial court, with the minimum to be set later by the Board of Prison Terms and Paroles (Board).[1] *Id*. The Board set his initial minimum sentence at 15 years. *Id*. It has since extended his minimum term at least five times. *Id*.

In 1997, the Indeterminate Sentence Review Board (ISRB) determined that Addleman was not rehabilitated and extended his minimum sentence by five more years. *Addleman* II, 139 Wn.2d at 752-53. In reaching its decision, the ISRB considered the treatment summary provided by the Sex Offender Treatment Program; a slang dictionary Addleman was writing, which included sexually charged terms cross-referenced to individuals Addleman knew; and Addleman's history and conduct, including his extensive history of filing litigation and grievances. *Id*.

Addleman challenged this 1997 extension on many grounds, including the ISRB's reliance on his litigation history. *Id*. We concluded that the ISRB could not consider Addleman's lawful and constitutional exercise of rights of redress. *Addleman* II, 139 Wn.2d at 754 (citing *Farr v. Blodgett*, 810 F. Supp. 1485 (E.D. Wash. 1993) and quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)). We held that the ISRB's action had an impermissible chilling effect on prisoners'

---

[1] Under Washington's former indeterminate sentencing system, the trial court determined the defendant's maximum sentence, with certain statutory exceptions. RCW 9.95.010, .011. Generally, the minimum sentence was set by the Board. Such sentences are now reviewed periodically by its successor, the Indeterminate Sentence Review Board (ISRB). *Id*.; *see generally* ch. 9.95 RCW. Prisoners have no vested right to be released after serving their mandatory minimum sentence; the mandatory minimum sentence merely establishes the date for a review of parolability. *E.g.*, *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 147, 866 P.2d 8 (1994). This indeterminate sentencing system was abandoned by Washington State with the Sentencing Reform Act of 1981 (SRA) and applies only to a dwindling number of convicts, including Addleman, whose misdeeds predate implementation of the Act. *See* LAWS OF 1981, ch. 137; ch. 9.94A RCW.

right of access to the courts and remanded for a new hearing, with all reference to Addleman's litigation and grievance activities stricken from the record. *Addleman* II, 139 Wn.2d at 756.

Addleman was given this new hearing in 2000. Once again the ISRB found that he was not rehabilitated and extended his minimum sentence by five years. Suppl. Br. of Resp't App. 1, at 1. Then in 2002, on its own and citing only a "procedural error," the ISRB vacated its 2000 decision. *See* Suppl. Br. of Resp't App. 1, at 1-2.[2] Addleman was given a new hearing in 2002. The ISRB again found Addleman was not rehabilitated. Again, it largely relied upon Addleman's criminal history, his 1996 Sex Offender Treatment Program Treatment Summary, an interview with Addleman, and Addleman's 2002 psychological profile. Suppl. Br. of Resp't App. 1, at 2-3. The ISRB also considered Addleman's slang dictionary and noted that it "had concerns . . . as it named [Department of Corrections] staff, correctional officers, treatment providers, and other inmates as well as politicians . . . [and] reflected degrading and demeaning descriptions of women, as well as sexualizing staff and correctional officers." *Id.* at 3.

At the conclusion of this 2002 hearing, the ISRB extended Addleman's minimum sentence by 175 months, more than 14 years. Because of the arithmetic of earned early release time, the ISRB's vacation of its 2000 decision, and our vacation of the 1997 order, Addleman is presumptively eligible for a parolability hearing in September 2005. Suppl. Br. of Resp't App. 3, at 2 (Decl. of Jody Swails). We agreed to review the 2002 extension of Addleman's minimum sentence. Wash. State Supreme Court Order, *In re Pers. Restraint of Addleman*, No. 73857-2 (Sept. 5, 2003).

---

[2] While the record is sparse and unclear, it appears that the ISRB had not accounted for Addleman's earned early release time. This time is deducted from his minimum sentence. Accordingly, Addleman was eligible for a parolability review much sooner than anticipated. Suppl. Br. of Resp't App. 3, at 2 (Decl. of Jody Swails); *see also* RCW 9.95.070, .110. We grant all motions before the court to expand the record and deny Addleman's motion for a reference hearing to contextualize the expanded record.

ANALYSIS

■ To prevail on a personal restraint petition challenging an ISRB decision, the petitioner must show unlawful restraint. RAP 16.4(b), (c); *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 148-49, 866 P.2d 8 (1994). We must decide whether the extension of Addleman's minimum sentence was unlawful.

■ First, we note that Addleman's equal protection challenge has been settled. *Foster v. Wash. State Bd. of Prison Terms & Parole*, 878 F.2d 1233, 1235 (9th Cir. 1989) (rejecting equal protection claim). The legislature has the power to shape the sentencing scheme without denying equal protection. *See Frazier v. Manson*, 703 F.2d 30, 36 (2d Cir. 1983). We note that Addleman was sentenced to life in prison and has no constitutional right to be released until he has finished serving his sentence. *E.g., Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) (quoting *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976)). Similarly, we have already rejected his claim that the operative statutes are unconstitutionally vague. *In re Pers. Restraint of Myers*, 105 Wn.2d 257, 268, 714 P.2d 303 (1986).

While Addleman has no constitutional claim to release prior to the expiration of his maximum sentence, in reviewing his parolability, the ISRB must comply with state and federal law and its own regulations. *Cashaw*, 123 Wn.2d at 150. This court may vacate and remand if it does not. *E.g., Addleman* II.

REASONABLE CONSISTENCY

■ Addleman essentially argues his restraint is unlawful because his sentence is significantly longer than the standard range provided for in the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. To determine whether he is correct, we must balance two duties placed on the

ISRB. The ISRB "shall attempt to make decisions reasonably consistent" with the SRA. RCW 9.95.009(2).[3] However, that duty must be balanced with the fact that prisoners serving indeterminate sentences are not resentenced under the SRA. In fact, the ISRB "shall not, however, until his or her maximum term expires, release a prisoner, *unless in its opinion his or her rehabilitation has been complete* and he or she is a fit subject for release." RCW 9.95.100 (emphasis added).

We conclude that between a statutory requirement that a prisoner is not to be released until rehabilitation is complete and a duty to attempt consistency with the SRA, the statutory requirement trumps the duty to attempt. The two duties, however, are not mutually exclusive but can be exercised in harmony with each other. The ISRB must make reasonable attempts to set its minimum sentences consistent with the SRA but has no duty to parole an unrehabilitated prisoner.

SLANG DICTIONARY

Addleman argues that the ISRB inappropriately relied upon a "slang dictionary" he was developing. He claims that the denial of parole was retaliation for exercising his First Amendment rights.

■ Addleman is correct that the State may not retaliate against him on the basis of exercising his free speech rights. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977); *Addleman* II, 139 Wn.2d at 752-54. However, he is not the first prisoner to claim retaliation based on the exercise of free speech, and there is a well established jurisprudence for analyzing such claims. Addleman must demonstrate

---

[3] More than 15 years ago, the ISRB reviewed all indeterminate sentences in light of the SRA and adjusted about 40 percent of the sentences. INDETERMINATE SENTENCE REVIEW BOARD, REPORT TO WASHINGTON STATE SENATE HUMAN SERVICES AND CORRECTIONS COMMITTEE (Nov. 6, 1987) (attach. to Amicus Curiae Br. Wash. Ass'n of Criminal Defense Lawyers). Addleman has not shown that the ISRB failed to "attempt" to make his sentence consistent with the SRA at that time.

that the ISRB's action was in fact retaliatory and that the alleged retaliatory action advanced no legitimate penological goals. *Hargis v. Foster*, 312 F.3d 404, 409 (9th Cir. 2002); *Barnett v. Centoni*, 31 F.3d 813, 814-16 (9th Cir. 1994) (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)).

Addleman does not attempt to meet this standard. Instead, he argues that the standard applied in *Addleman* II to a right of access to the courts should apply instead. Under this proposed standard, he would merely need to show that he engaged in protected conduct, that "an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct," and that there was a causal connection between the two. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), *cited with approval in Addleman* II, 139 Wn.2d at 754.

However, this takes *Addleman* II far from the issue we were considering. In that case, this court considered the ISRB's denial of parole on the (partial) basis of Addleman's vigorous use of the judicial system. *Cf. Addleman* II, 139 Wn.2d at 755. Over the past decades, precise tests for evaluating free speech challenges in the prison context have been developed and are regularly applied. Addleman has not met his initial burden of arguing under established jurisprudence that the consideration of his slang dictionary is impermissible.

ABUSE OF DISCRETION

 Addleman bears the burden of demonstrating that the ISRB abused its discretion when it extended his minimum term. *See generally In re Pers. Restraint of Locklear*, 118 Wn.2d 409, 418, 823 P.2d 1078 (1992). The ISRB abuses its discretion and acts unlawfully when it fails to follow its own procedural rules for parolability hearings. *Id.*; *cf. Cashaw*, 123 Wn.2d at 149-50. Addleman does not demonstrate that the ISRB failed to follow its own procedural rules. The ISRB may also abuse its discretion by

failing to consider the standard ranges set forth in the SRA. *Locklear*, 118 Wn.2d at 418; *see generally Myers*, 105 Wn.2d 257.

First, Addleman argues, essentially, that discretion must have been abused because his current minimum sentence is so much larger than the sentence he would have received under the SRA. Again, those sentenced prior to the SRA are not entitled to retroactive application of an SRA standard sentence. *See, e.g., Addleman v. Bd. of Prison Terms & Paroles*, 107 Wn.2d 503, 511, 730 P.2d 1327 (1986). While the court will consider the result of the ISRB's exercise of discretion, "courts are *not* a super Indeterminate Sentencing Review Board." *In re Pers. Restraint of Whitesel*, 111 Wn.2d 621, 628, 763 P.2d 199 (1988).

Second, Addleman argues that the ISRB abused its discretion because, he believes, there was insufficient evidence to support its conclusion that he was not rehabilitated. We disagree. At the least, Addleman would have to show that the ISRB acted "without consideration of and in disregard of the facts." *Ben-Neth v. Indeterminate Sentencing Review Bd.*, 49 Wn. App. 39, 42, 740 P.2d 855 (1987). However, he does not meet this burden as there was ample evidence supporting the ISRB's conclusion that Addleman was not rehabilitated and evidence to the contrary was duly considered. *E.g.*, ISRB Decision & Reasons (ISRB Decision) (final decision May 1, 2002), attach. to Mot. for Discretionary Review.

Since we have taken review of this case, we will examine the ISRB's Decision with some care. We note, however, normally a mere allegation that the ISRB was arbitrary and capricious will not be considered by this court without some prima facie showing by the petitioner. The ISRB's Decision notes that Addleman was convicted of one count of statutory rape in the first degree and sentenced to a maximum of life in prison. The ISRB's Decision also notes that the range under the SRA is 108 to 144 months and as of the date of the hearing Addleman had served 261 months. Addleman's prior criminal history included a 1963

indecent liberties conviction, a 1963 assault which involved a stabbing, and a 1973 aggravated kidnapping conviction which is described as sexually motivated and involved a teenage girl. In treatment, Addleman identified 31 victims ranging in age from infancy to a 39 year old woman (Addleman now admits to only seven or eight victims). Addleman has progressed with treatment and has apparently been compliant with all institutional rules since 1989. He has, however, maintained a slang dictionary of sexual terms reflecting degrading and demeaning descriptions of women, as well as sexualizing correctional staff and officers by name. A current psychological evaluation was performed in January 2002, prior to his 2002 hearing. Several psychological screening and evaluation tests were performed.[4] Those tests and the psychologist suggest that Addleman presents a high risk of committing another violent offense within six months after release. Based on the evidence presented, the ISRB concluded that Addleman presents too great a risk to be released to the community at this time.

## CONCLUSION

We conclude that the ISRB has considered the presumptive ranges in computing Addleman's sentence and has set forth an adequate record of reasons to justify a departure from the standard range. We further conclude Addleman has not shown that his constitutional rights have been violated. Addleman's other claims are either outside the scope of review granted or have already been resolved by this court and do not merit review. We hold that Addleman has failed to meet his burden and his petition is denied.

IRELAND, BRIDGE, OWENS, and FAIRHURST, JJ., concur. MADSEN, J., concurs in the result.

---

[4] It may well be that the tests relied upon by the ISRB are unreliable as contended by Amicus Washington Association of Criminal Defense Lawyers and that the ISRB is really inappropriately treating Addleman as a persistent sexual offender without appropriate process or expertise. We do not reach this issue.

JOHNSON, J. (dissenting) — We granted review of this case to determine whether the Indeterminate Sentence Review Board's (ISRB) decision to extend Lincoln Addleman's minimum term by 175 months was lawful. The majority incorrectly "harmonizes" the two statutory duties placed on the ISRB by writing one duty out of existence. I would find that the ISRB failed to follow its statutory duty to make decisions "reasonably consistent" with the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, when it decided to extend Addleman's minimum term. I dissent.

In this case, the ISRB has two statutory duties. First, the ISRB must make decisions that are "reasonably consistent" with the purposes, standards, and sentencing ranges of the SRA. If a decision on the duration of confinement is outside the standard SRA ranges, the ISRB must give adequate written reasons for the departure. RCW 9.95.009(2) specifically provides that:

> When making decisions on duration of confinement . . . the board shall consider the purposes, standards, and sentencing ranges adopted pursuant to RCW 9.94A.850 and the minimum term recommendations of the sentencing judge and prosecuting attorney, and *shall attempt to make decisions reasonably consistent with those ranges, standards, purposes, and recommendations*: PROVIDED, [t]hat [it] shall give adequate written reasons whenever a minimum term or . . . decision is made which is outside the sentencing ranges adopted pursuant to [the SRA].

(Emphasis added; reviser's note omitted.) Second, the ISRB must not release offenders if their rehabilitation is not "complete." RCW 9.95.100 states, in pertinent part, that "[t]he board shall not . . . until his or her maximum term expires, release a prisoner, unless in its opinion his or her rehabilitation has been complete and he or she is a fit subject for release."

The majority errs in not analyzing these two duties separately. The majority claims that the duties can be harmonized with each other, yet also states that the ISRB's duty under RCW 9.95.100 "trumps" the ISRB's duty under

RCW 9.95.009(2).[5] Majority at 775. The majority provides no support for this conclusion, nor any attempt to reconcile the apparent inconsistency.

The majority views the first duty of the ISRB as merely an "attempt" by the ISRB to be reasonably consistent with the SRA. Majority at 775 n.3. Although RCW 9.95.009(2) includes the word "attempt," the majority's emphasis on that word is inconsistent with our jurisprudence. We have previously determined that RCW 9.95.009(2) places a "clear limitation" on the discretion of the ISRB. *In re Pers. Restraint of Myers*, 105 Wn.2d 257, 262, 714 P.2d 303 (1986).

In *Myers*, the defendant asserted that RCW 9.95.009(2) was void for vagueness under the federal due process clause because defendants could only guess how the ISRB might "attempt" to be "reasonably consistent" with SRA guidelines. *Myers*, 105 Wn.2d at 266-67. We rejected this argument based on the express language of RCW 9.95.009(2). Pursuant to the statute, the ISRB is empowered only to impose sentences reasonably consistent with the SRA and has no inherent power to "amend or alter the statutes under which it functions." *Myers*, 105 Wn.2d at 264. By claiming that RCW 9.95.100 trumps the ISRB's duty under RCW 9.95.009(2), the majority is ostensibly delegating this power to the ISRB, which is contrary to the express language of the statute. In effect, the majority writes RCW 9.95.009(2) out of existence and gives the ISRB full discretion regarding sentencing decisions.[6]

In support of the "reasonably consistent" requirement of RCW 9.95.009(2), we have required the ISRB's procedures and factors relevant to setting minimum terms to be "substantially similar" to the SRA's exceptional sentence

---

[5] Specifically, the majority provides that the statutory requirement that a prisoner is not to be released until rehabilitation is complete "trumps" the ISRB's statutory requirement to attempt consistency with the SRA.

[6] This result is contrary to our decision in *Myers*, 105 Wn.2d at 263 where we held that Parole Board Rule 2.081 conflicted with the legislative intent of RCW 9.95.009(2) because it gave "full discretion" to the ISRB to fix minimum terms.

procedures and factors. *In re Pers. Restraint of Locklear*, 118 Wn.2d 409, 416, 823 P.2d 1078 (1992). In *Locklear*, we recognized that similar treatment of SRA offenders and pre-SRA offenders was required not only by statute but also by principles of equal protection. This determination supports the purpose of RCW 9.95.009(2), which was enacted to "remedy a statutory scheme that otherwise would create gross disparity between sentences set under the indeterminate sentencing scheme and sentences set under the SRA's determinate scheme." *Myers*, 105 Wn.2d at 267.

The majority ignores the statutory requirement of similar treatment and erroneously focuses on RCW 9.95.100.[7] This statute provides that the ISRB must not release a prisoner "unless in its opinion his or her rehabilitation has been complete and he or she is a fit subject for release." RCW 9.95.100. Here, the ISRB determined that Addleman was not fit for release and denied his parole. This decision resulted in an extension of Addleman's minimum term by 175 months.[8] Suppl. Br. of Pet'r at 7. Under the SRA, Addleman's standard sentence range is 108-144 months. Suppl. Br. of Resp't at 4. At the time of the hearing, Addleman had served 303 months, which amounts to a sentence of 455 months before good time credit is considered. Suppl. Br. of Pet'r at 7. With the addition of 175 months, Addleman's current sentence is 630 months. Suppl. Br. of Pet'r at 7. This is more than four times the high end of the SRA range.

The ISRB based its decision to extend Addleman's minimum term on information that Addleman lacks rehabilitation due to a slang dictionary he developed and due to the fact that he is at a high risk to reoffend. Majority at 777-78.

---

[7] As mentioned, the majority goes as far to say that RCW 9.95.100 "trumps" RCW 9.95.009(2). Majority at 775.

[8] The ISRB contends that Mr. Addleman's minimum term was extended by only 63 months. Suppl. Br. of Resp't at 6.

Addleman does show signs of lacking rehabilitation,[9] but those signs are not proportional to the large disparity between his sentence and the SRA's standard range. Although the ISRB can consider the extent of rehabilitation when setting an offender's minimum term, an exceptional sentence based on "lack of rehabilitation" nullifies the requirement of RCW 9.95.009(2).[10] Such decisions further conflict with the SRA's purpose of providing proportional sentences for those convicted of crimes of the same statutory category who have the same criminal history and arguably violate principles of equal protection.

I would find it not reasonably consistent with the SRA to increase a sentence by 175 months, which is three to four times the high end of the sentencing range. As required by RCW 9.95.009(2), the ISRB has not given an adequate written explanation for departing from SRA guidelines, nor does any evidence exist to suggest that the ISRB even considered the SRA in setting Addleman's minimum term. Accordingly, the ISRB has failed to show that Addleman's disputed lack of rehabilitation is proportional to the disparity between his minimum sentence and the SRA's range as required by RCW 9.95.009(2). Because I would find the extension of Addleman's minimum term to be inconsistent with the SRA, and therefore unlawful, I would grant his petition.

ALEXANDER, C.J., and SANDERS, J., concur with JOHNSON, J.

Reconsideration denied July 28, 2004.

---

[9] Information suggests that Addleman lacks rehabilitation, but that is countered somewhat by evidence that he "has not had an infraction since 1989 and has been compliant with institution rules." Ex. 8.

[10] If the ISRB is concerned about Addleman's lack of rehabilitation and his risk of reoffending, it should not extend his minimum sentence in order to keep from releasing him. As discussed above, the extension would not be consistent with the SRA. Instead, the State could proceed against Addleman under the civil commitment statute as a sexually violent predator. See ch. 71.09 RCW.