# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition of: | No. 46370-9-II |
| JAMES LEE WALTERS, | |
| Petitioner. | UNPUBLISHED OPINION |

MELNICK, J. — A jury convicted James Lee Walters of kidnapping and sex offenses. The trial court sentenced him to a minimum term of 68 months of confinement with a maximum term of life. In his personal restraint petition (PRP), Walters argues the Indeterminate Sentencing Review Board (ISRB) abused its discretion when it denied his release because he had not completed sex offender treatment in prison and when it considered the facts of a prior sex offense for which he had been acquitted. He also argues his due process rights were violated because the ISRB was not a neutral and detached hearing body. Finding no error, we deny Walters's PRP.

## FACTS

On May 22, 2007, the State charged Walters with kidnapping in the first degree with sexual motivation and indecent liberties by forcible compulsion. On September 26, 2008, on retrial, a jury convicted Walters on both counts. The trial court sentenced Walters to a minimum term of 68 months of confinement with a maximum term of life and to community custody for the remainder of his life.

I.    SUMMARY OF FACTS FROM TRIAL AND DIRECT APPEAL

On March 8, 2006, Walters abducted 13-year-old S.L. on her way home from school. She lived approximately a mile and a half from a gated entrance on the main road. As S.L. approached her home, she heard a branch snap and saw her neighbor, Walters, in a camouflage mask. She asked, "'Is that you Jimmy?'" but received no response. Clerk's Papers (CP) at 124. She turned to walk away when Walters grabbed her from behind, threw a towel over her head, and secured it with duct tape. He also duct taped her hands in front of her. Walters rubbed her buttocks, lifted her, and carried her over his shoulder for a few minutes.

S.L. said that Walters took her through the horse fence that surrounded his property. He then took her into the woods and they ended up in a hole. Walters made her sit down. He removed the duct tape from her hands, but when S.L. tried to take the towel off her head, Walters taped her hands behind her back. He placed duct tape in her mouth and taped over it. Walters then licked a tear off her face. Shortly thereafter, S.L. heard the distinctive ring of Walters's cell phone. She heard him flip the phone open and then close it. Walters left her there. S.L. struggled to get out of the duct tape, succeeded, and went home.

S.L., Walters's daughter's best friend, believed Walters was the person who abducted her. She deduced this fact because the man wore clothes she had seen Walters wear before and he stood on Walters's property. The police found similarly described clothing as well as duct tape in Walters's home. At the time of the abduction, Walters was supposed to pick up his son and S.L.'s brother, but he did not. At trial, the State presented evidence that Walters's cell phone received a call at the time S.L. indicated she heard his cell phone ring. Additional witness testimony at trial indicated that Walters knew details about the abduction before they were told to him.

2

Walters filed a direct appeal in 2008. *See State v. Walters*, noted at 156 Wn. App. 1026, 2010 WL 2283570. We affirmed Walters's conviction, *Walters*, 2010 WL 2283570, at *5, and the Supreme Court denied his petition for review, *State v. Walters*, 171 Wn.2d 1016 (2011).

II.    RCW 9.95.420 HEARING (.420 HEARING)

On July 10, 2013, the ISRB held a .420 hearing pursuant to RCW 9.95.420 to determine whether Walters was more likely than not to commit another sex offense if released on conditions. Walters's counselor, Susan Smith, provided testimony to the ISRB about Walters's behavior while incarcerated and visits he received from his family and friends. The ISRB considered information from the End of Sentence Review Committee (ESRC), which classified Walters as a level III sex offender.

The ISRB also sought information from Walters. Walters testified "I'm here 'cause I'm accused of kidnapping a neighbor girl but I really can't go into much 'cause I'm fightin' my case. . . . I want to do this treatment and everything but I can't because they won't let me without sayin' things to go against my rights on fightin' my case." ISRB Hearing Transcript (Hr'g Transcript) at 4. He further stated that he attempted to enroll in the Sex Offender Treatment Program (SOTP), but the program rejected his application because he was still appealing his case. The ISRB questioned Walters about his appeal, and indicated the "appellate court upheld the sentence in 2010 and that the Supreme Court denied a hearing and the case was returned to the sentencing court for a mandate on May 18th, 2011." Hr'g Transcript at 5. The ISRB stated "there's no way that this one member would even think about letting you out without having gone through treatment." Hr'g Transcript at 7. Walters testified that he was willing to do sex offender treatment in the community if released. The ISRB told Walters that it could recommend he be admitted for SOTP, but the program would not take him "unless you say 'this is what I did.'" Hr'g Transcript

at 8. The ISRB also noted that "I don't think we've ever released anybody with . . . a crime this serious to do treatment in the community. . . . [I]t puts the public at too great a risk." Hr'g Transcript at 12. The ISRB stated that it wanted the treatment to be completed before it authorized Walters's release.

The ISRB discussed with Walters the seriousness of his offense and the frequency of his sex offenses. The ISRB referred to a 1983 incident for which Walters was acquitted. The ISRB considered the 1983 incident because the ESRC had utilized it in classifying Walters as a level III sex offender and it was part of the file before the ISRB. Walters said that he would answer any questions about the 1983 case because when compared to his current case, it was dissimilar. Walters acknowledged that he knew the victims in both the 1983 case and the current case. However, in the 1983 case, he stated the victim did not accuse him of rape. He also said that in 1983, he was nowhere near the house where the rape occurred. Walters testified that he did not recall taking a polygraph test for the 1983 incident that indicated he was deceptive even though the record contained such a notation.

In its decision following the .420 hearing, the ISRB concluded that Walters was more likely than not to commit a sex offense if released into the community on conditions. Consequently, it did not release Walters and added 36 months' incarceration to his minimum term. The IRSB based its decision on information included in the ESRC report, the ESRC's classification of Walters as a level III sex offender, information on Walters's behavior in prison, letters of support, and concerns sent to the ISRB. It also considered information regarding his pending appeal at the time. The ISRB reasoned that although Walters indicated he could not speak about his case while it was on appeal, Walters still had not taken any steps to mitigate his risk to the community, such as treatment.

Walters has since enrolled in SOTP. In his application to the program, Walters described his crime of conviction: "I don't remember the details, I was up for 3 days [and] her dad would not sell me anymore meth, I was waiting for Scott (her dad) when she came walking by so I grab[bed] her to get to her dad." Suppl. Br. of ISRB at Ex. 12.

Walters filed a PRP seeking relief.

## ANALYSIS

Walters argues that because of the ISRB's abuse of discretion and constitutional violations at the .420 hearing, he is unlawfully restrained. We disagree.

"A petitioner must show he is under unlawful restraint to succeed on a PRP challenge of an ISRB decision." *In re Pers. Restraint of Dyer*, 164 Wn.2d 274, 285, 189 P.3d 759 (2008) (*Dyer II*) (citing RAP 16.4(b), (c)); *see also In re Pers. Restraint of Addleman*, 151 Wn.2d 769, 774, 92 P.3d 221 (2004).

I.      THE ISRB DID NOT ABUSE ITS DISCRETION

Walters argues that the ISRB abused its discretion when it denied his release at the .420 hearing based on his nonparticipation in sex offender treatment. Walters also argues that the ISRB abused its discretion when it considered facts of an acquitted prior charge of rape in 1983 at the .420 hearing. We disagree. At the hearing, the ISRB properly considered both the lack of treatment and the prior 1983 charge in determining whether it was more likely than not that Walters would reoffend if released.

A.      Standard of Review

The burden rests with the petitioner to prove the ISRB abused its discretion. *Addleman*, 151 Wn.2d 776. "The ISRB abuses its discretion when it fails to follow its own procedural rules for parolability hearings or acts without consideration of and in disregard of the facts." *In re Pers.*

*Restraint of Dyer*, 157 Wn.2d 358, 363, 139 P.3d 320 (2006) (*Dyer I*). "Reliance upon 'speculation and conjecture' with disregard of the evidence also constitutes an abuse of discretion." *Dyer II*, 164 Wn.2d at 286. To support a determination of the decision being arbitrary and capricious, we must find that the ISRB acted willfully and unreasonably. *Dyer II*, 164 Wn.2d at 286.

> At a .420 hearing, the ISRB shall

> determine whether it is more likely than not that the offender will engage in sex offenses if released on conditions to be set by the board. . . . The board shall order the offender released, under such affirmative and other conditions as the board determines appropriate, unless the board determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the offender will commit sex offenses if released.

RCW 9.95.420(3)(a).

B.      Lack of Participation in Sex Offender Treatment

Walters argues that the ISRB abused its discretion when it denied his release because his non-amenability to treatment, by itself, was insufficient to satisfy the standard by a preponderance of the evidence that he is more likely than not to commit sex offenses if released.

Participation in SOTP requires that the offender "must acknowledge/recall having committed a sex offense" and believe "that treatment will reduce his . . . risk to re-offend." Br. of ISRB at Ex. 5. There is an implication in the application to the SOTP that an offender may not participate in the program if he is in the process of an appeal; however, the application does not specifically limit participation if the offender is in the process of an appeal. As the ISRB noted, the program does not require that the offender admit to the specific offense for which he is currently serving time.

Our Supreme Court has held that the ISRB may decide to not release an untreated sex offender because, due to the lack of treatment, he would be more likely than not to commit new sex offenses. *Dyer II*, 164 Wn.2d at 280. In *Dyer II*, the ISRB denied Dyer parole because he had

not participated in treatment. 164 Wn.2d at 283. The ISRB noted that SOTP "requires 'full candor' and Dyer was not eligible for SOTP because he continued to maintain his innocence." *Dyer II*, 164 Wn.2d at 283. Accordingly, the ISRB denied Dyer parole because "'[W]ithout an exploration and understanding of the behaviors that directly resulted in his incarceration, he remains at risk to repeat those behaviors in the community.'" *Dyer II*, 164 Wn.2d at 285.

"[S]ettled law establishes that the ISRB may consider the offender's failure to obtain treatment" in its decision. *Dyer II*, 164 Wn.2d at 288; *see also In re Pers. Restraint of Dyer*, 175 Wn.2d 186, 199, 283 P.3d 1103 (2012) *(Dyer III)*. "This [consideration] is appropriate even where the necessary treatment program requires the offender to first take responsibility for criminal behavior." *Dyer III*, 175 Wn.2d at 199. Although the Washington Supreme Court stated that "[s]ex offender treatment is not a cure for sex offenders," *Dyer III*, 175 Wn.2d at 199, it adopted the position that "'the first step toward rehabilitation of an offender is the offender's recognition that he was at fault.'" *In re Pers. Restraint of Ecklund*, 139 Wn.2d 139 Wn.2d 166, 176, 985 P.2d 342 (1999) (quoting *Gollaher v. United States*, 419 F.2d 520, 530 (9th Cir. 1969)). In denying parole or release, the ISRB may rely on the fact that the offender is not engaged in treatment and that the offender has not taken responsibility for criminal behavior. By statute, the ISRB must deny parole if the inmate is not rehabilitated or is otherwise unfit for release. RCW 9.95.100; *Ecklund*, 139 Wn.2d at 176. Although parole hearings are not identical to .420 hearings and have different standards for an offender's release, both panels adjudicating the hearings have the public's safety in mind when considering the release of an offender. *See* RCW 9.95.100. Therefore, the reasoning is equally applicable and does not affect our analysis.

At the time of the .420 hearing, Walters had not taken responsibility for his sex offenses. This failure prevented him from obtaining the treatment that the ISRB deemed necessary for his

7

release. Walters testified he was in the midst of appealing his conviction and did not admit to the 1983 charge or any other sex offense. Walters expressed his interest in completing sex offender treatment in the community, but the ISRB did not find that option acceptable. The ISRB considered Walters's risk level as determined by the ESRC, the seriousness of the offense, and the lack of treatment. Walters was not in treatment and the ISRB determined the public would be at risk because it was more likely than not Walters would commit more sex offenses. Because of the risk to the public, the ISRB did not want Walters's treatment to be in the community. It considered many factors, including the fact the ESRC classified Walters as a level III sex offender, the highest level and those most likely at risk to reoffend. Former RCW 72.09.345(6) (2011). The ISRB stated:

> I don't think we've ever released anybody with a . . . crime this serious to do treatment in the community. Um, it puts the public at too great a risk. We want the treatment done before. . . . We've released level three offenders, but not with this serious offense with no treatment.

Hr'g Transcript at 12.

The ISRB acted within its discretion when it denied Walters's release and found that it was more likely than not that if released, Walters would commit new sex offenses because he was an untreated sex offender. *See Dyer II*, 164 Wn.2d at 288. Walters failed to demonstrate that the ISRB abused its discretion. The ISRB did not act willfully or unreasonably and it did not rely on speculation or conjecture in making its decision.

C.      ISRB's Consideration of 1983 Rape Charge in Its Decision

Walters argues that the ISRB abused its discretion because it should not have considered information regarding a prior sex offense for which he was acquitted. Walters argues that the ISRB did not have sufficient information regarding the 1983 incident to conclude he was guilty, and therefore, "the decision was speculative at best." Br. of Petitioner at 11. We disagree.

8

In preparation for a .420 hearing, the ESRC assesses the public risk of an offender who may be released into the community. It classifies the offender into a risk level for public notification, reviews the offender's release plan if one is available, and makes appropriate referrals. Former RCW 72.09.345(5). The ESRC then provides its file and determination to the ISRB. *See* former RCW 72.09.345(5). The statute limits the information that may be considered by the ESRC to relevant records and information held by public agencies. Former RCW 72.09.345(4). When the ESRC classifies offenders into the appropriate risk level, the statute instructs that, "[t]he committee shall classify as risk level III those offenders whose risk assessments indicate a high risk of reoffense within the community at large." Former RCW 72.09.345(6).

In assessing Walters, the ESRC referred to information on his 1983 charge of burglary in the first degree and rape in the first degree.[1] The ESRC report stated that its sources of information were "Prosecutor's Information and Determination of Probable Cause, Motion to Introduce Evidence, Judgment and Sentence, Pre-Sentence Investigation report, Police report(s), and Official File records." Br. of ISRB at Ex. 4. The ESRC did note in its report that "Court documents for this offense could not be obtained." Br. of ISRB at Ex. 4 (emphasis omitted).

The ISRB did not abuse its discretion in considering Walters classification by the ESRC. Nor did the ISRB abuse its discretion in considering the evidence the ESRC relied on when making

---

[1] Without objection, the ISRB heard information on the 1983 case at the .420 hearing. Walters was charged with raping his friend's 15-year-old sister after he entered their house through the garage. Walters knew the victim was home. The victim told police that the assailant never said a word and wore a white cloth tied around his head. She said he sexually assaulted her and tried to choke her with a piece of broken ax handle. Walters voluntarily participated in a polygraph examination that determined Walters was deceptive. Additionally, the crime lab did a blood sample comparison with semen recovered from the victim; Walters's blood type was the same as the contributor of the semen.

9

its classification. This information was relevant to the ISRB's ultimate decision, i.e. whether Walters should be released into the community.

II.    DUE PROCESS AT .420 HEARING

Walters argues that the ISRB violated his constitutional right to due process by failing to review and decide his case in a neutral and detached manner because, he alleges, the ISRB said it would not release any sex offender who had not yet participated in treatment. We disagree.

A.    Standard of Review

We review constitutional questions de novo. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006).

An individual seeking the procedural protection of the Fourteenth Amendment's due process clause must establish that his or her interest in life, liberty, or property is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005). "A liberty interest may arise from the Constitution," from "guarantees implicit in the word 'liberty,'" or "from an expectation or interest created by state laws or policies." *Wilkinson*, 545 U.S. at 221. Where an individual establishes a liberty interest, due process protections apply. *See Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). If protected interests are implicated, we then must decide if the procedures employed constituted due process of law. *Morrissey*, 408 U.S. at 481.

B.    Neutral and Detached Hearing Body

Offenders are entitled to some procedural protections at a .420 hearing, including that of a neutral and detached hearing body. *In re Pers. Restraint of McCarthy*, 161 Wn.2d 234, 240-41,

164 P.3d 1283 (2007). Walters implies that the ISRB was biased against his release because it was not a neutral and detached decision maker.[2]

As a threshold matter, we determine that Walters had a liberty interest at stake in his .420 hearing. The Washington Supreme Court determined that RCW 9.95.420(3) creates a presumption in favor of release, and therefore a "limited liberty interest by restricting the [ISRB's] discretion and establishing a presumption that offenders will be released to community custody upon the expiration of their minimum sentence." *McCarthy*, 161 Wn.2d at 241.

We next determine what process is due. "When a statute creates an expectancy of release, offenders are entitled to some measure of constitutional protection." *McCarthy*, 161 Wn.2d at 241.

To establish a due process violation there must also be an affirmative showing that the decision maker was biased during the hearing. *See Ritter v. Bd. of Comm'rs of Adams County Pub. Hosp. Dist. 1*, 96 Wn.2d 503, 513, 637 P.2d 940 (1981). Walters fails to make this showing. The ISRB received evidence, asked Walter's questions, and discussed the seriousness of his crime with him before making a determination.

The "appearance of fairness doctrine extends the due process requirement that judicial officers be free of any taint of bias to administrators acting in quasi-judicial capacity. It provides protection against decision makers who are actually biased or have a pecuniary interest in the proceedings." *City of Lake Forest Park v. Shorelines Hr'gs Bd.*, 76 Wn. App. 212, 217, 884 P.2d 614 (1994) (internal citation omitted). "Not only is a biased decision maker constitutionally unacceptable, but 'our system of law has always endeavored to prevent even the probability of

---

[2] Although Walters does not discuss bias specifically, he seems to argue that the ISRB was biased and not neutral and detached.

unfairness.'" *Med. Disciplinary Bd. Johnston*, 99 Wn.2d 466, 475, 663 P.2d 457 (1983) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955)). "Under the appearance of fairness doctrine, proceedings before a quasi-judicial tribunal are valid only if a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing." *Johnston*, 99 Wn.2d at 478. "Where there is merely a general predilection toward a given result which does not prevent the agency members from deciding the particular case fairly, however, there is no deprivation of due process." *Johnston*, 99 Wn.2d at 475.

Walters cites to specific statements by ISRB members that he argues shows a bias. For instance, he cites to the statement: "'[T]here's no way that this one member would even think about letting you out without having gone through treatment.'" Br. of Petitioner at 19 (quoting Hr'g Transcript at 7)) (emphasis omitted). However, prior to making this statement, the ISRB considered information about Walters's sex offender classification level, heard from Walters's counselor about his behavior as an inmate, and heard from Walters. In addition, the ISRB explained that Walters was in prison for a very serious sex offense and kidnapping charge. The ISRB considered the information before it in a neutral manner and concluded Walters was more likely than not to commit another sex offense if released. The ISRB attempted to explain its reasoning to Walters: "this is what we have in front of us and unless there's some way for you to mitigate your risk and so we look at what sort of programs you've taken . . . sexual deviancy treatment will be at the top of the list . . . to help mitigate your risk." Hr'g Transcript at 10-11. The ISRB also explained that the release of someone with such a serious crime without treatment, or rehabilitation, would put "the public at too great a risk," and that "the Board has to take into consideration all this information that . . . is in our files." Hr'g Transcript at 12, 14.

The ISRB did not violate due process rights because it was not biased against Walters. A disinterested observer would conclude that Walters received a fair, impartial, and neutral hearing.

We deny Walters's petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Bjorgen, A.C.J.

Sutton, J.