**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>JOHN EDWARD FLETCHER, JR.,<br><br>Petitioner. | No. 52722-7-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — John Fletcher Jr. filed a personal restraint petition (PRP) seeking relief from personal restraint imposed as a result of the December 2017 decision of the Indeterminate Sentence Review Board (ISRB) that found him not releasable and added 60 months to his minimum term of confinement. We deny Fletcher's PRP.

## I. FACTS

Fletcher pleaded guilty to first degree robbery in 1981, before the enactment of the Sentencing Reform Act of 1981, ch. 9.94A RCW (SRA), and was sentenced to a maximum term of confinement of life. The predecessor to the ISRB set his minimum term of confinement at 108 months. The ISRB then reset his minimum term at 102 months.

The ISRB paroled Fletcher in 1990, but it revoked his parole in 2007 for infractions committed while serving a term of confinement for a first degree burglary and first degree assault he committed after being paroled. After a 2013 parolability hearing, the ISRB found Fletcher

conditionally parolable and added 30 months to his minimum term to complete a mutual reentry plan.

After Fletcher committed infractions while on work release, the ISRB conducted another parolability hearing in 2016. The ISRB again found Fletcher conditionally parolable and added 24 months to his minimum term to complete his mutual reentry plan.

In October 2017, Fletcher received two serious infractions. The first was for violating WAC 137-25-030(557) for refusing to participate in an available work, training, education, or other mandatory programming assignment. The infraction report stated that Fletcher had missed 8 out of 10 of his assigned classes and completed 0 out of 13 assignments. At his hearing, Fletcher stated that he could not attend class because of his bad shoulder and back and had an "HSR" (Health Status Report) excusing him from class. Pet. at 6. The hearing examiner noted that staff advised there was not an HSR on file for Fletcher. The hearing examiner found Fletcher guilty of violating WAC 137-25-030(557).

The second infraction was for WAC 137-25-030(724) for refusing a cell or housing assignment. The infraction report stated that Fletcher "refused numerous directives [to] return to his cell." Resp., Ex. 24 at 2. At his hearing, Fletcher told the hearing examiner he had mental health problems and "was hearing voices telling [him] to leave the Evergreen Unit." Resp., Ex. 24 at 2. The hearing examiner found Fletcher guilty of violating WAC 137-25-030(724).

Before his December 2017 parolability hearing, Fletcher underwent a psychological evaluation with Deborah Wentworth, Ph.D. The evaluation determined that Fletcher "has a rather passive or victim stance about obtaining necessary programming to enable him to transition to the community." Resp., Ex. 20 at 9. And Dr. Wentworth characterized Fletcher's motivation to be

released as "questionable." Resp., Ex. 20 at 9. Dr. Wentworth determined that Fletcher was a high risk level with only slight mitigation factors. The evaluation noted, "[Fletcher] states he wants to release and obtain work, but has done nothing over the more than 30 years of incarceration to improve his training and skill level." Resp., Ex. 20 at 15. The evaluation did not recommend release or transition to a less restrictive setting.

At Fletcher's December 2017 parolability hearing, Fletcher's classification counselor testified that Fletcher had been transferred to "camp" as part of his release plan, but he had been transferred back to prison in September because he felt threatened and asked to be removed from camp. Resp., Ex. 2 at 3. The classification counselor also explained Fletcher had been signed up for a building maintenance class but he failed to attend. And Fletcher failed to attend his scheduled mental health appointments. Fletcher told the ISRB that he had a shoulder injury that prevented him from attending class. And Fletcher explained he missed the mental health appointments because nobody reminded him.

The ISRB noted that Fletcher "took little personal responsibility for himself." Resp., Ex. 2 at 4. The Board also noted that Fletcher had incurred two serious infractions since his return from camp. And "[Fletcher] denied responsibility for these though he was found guilty in a disciplinary hearing." Resp., Ex. 2 at 4. The ISRB's decision did not contain any other reference to Fletcher's recent infractions.

The ISRB found,

Mr. Fletcher has shown little motivation for self-improvement. He presents as one who believes everyone else is responsible for him. His psychological evaluation is not positive. The descriptor for his probability to reoffend violently is considered high based upon his [Violence Risk Appraisal Guide-Revised] VRAG-R score. Overall, Mr. Fletcher presents as too unmotivated and too irresponsible to consider for release at this time. He could be taking more positive steps to prepare for release

3

and has failed to do so. The Board expects he will participate in recommended programming and remain serious infraction free.

Resp., Ex. 2 at 5. The ISRB added 60 months to his minimum term. In this PRP, Fletcher raises eight issues.

## II. ANALYSIS

First, Fletcher argues that the Department of Corrections erred in finding that he had violated WAC 137-25-030(724) (refusing a housing assignment) and WAC 137-25-030(557) (refusing to participate in a mandatory programming assignment). He contends that as to the former, the notice of infraction was insufficiently detailed, and as to the latter, the hearing officer erred in not contacting the medical unit to confirm that he had an excuse for not attending. We review prison disciplinary proceedings to determine whether the Department's action was so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding. *In re Pers. Restraint of Reismiller*, 101 Wn.2d 291, 294, 678 P.2d 323 (1984). In doing so, we look to whether petitioner received the due process protections afforded him under *Wolff v. McDonnell*, 418 U.S. 539, 563-65, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). These protections include (1) advance written notice of the charged violations, (2) the opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals, and (3) a written statement of the evidence relied on and the reasons for the disciplinary action. Fletcher received all of these protections. When there is "some evidence" in the record, we will affirm the Department's disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985); *In re Pers. Restraint of Johnston*, 109 Wn.2d 493, 497, 745 P.2d 864 (1987).

Here, the Department presented some evidence to support the violation of WAC 137-25-030(557) because the infraction report stated that Fletcher had not completed any class assignments and had only attended two classes. And the Department presented some evidence to support the violation of WAC 137-25-030(724) because the infraction report stated that Fletcher refused to return to his cell. Fletcher even appeared to admit he refused to return to his cell because of the voices he was hearing. Therefore, we affirm the Department's decisions finding Fletcher guilty of the two infractions.

Second, Fletcher argues that the ISRB abused its discretion in relying on the above infractions as part of its reasons for finding him not parolable and adding to his minimum term. He contends that the ISRB is required to redetermine whether the infractions were committed, rather than relying on the Department's decisions. But he does not show that there is any such requirement. The ISRB did not abuse its discretion in considering the disciplinary infractions. *In re Pers. Restraint of Addleman*, 151 Wn.2d 769, 776-77, 92 P.3d 221 (2004).

Third, Fletcher argues that the ISRB abused its discretion in not giving him a copy of the psychological evaluation report 30 days in advance of the parolability hearing. But when Fletcher informed the ISRB at the parolability hearing that he had not had an opportunity to review his file, the ISRB offered to continue the hearing to allow him time to do so. He declined that offer. The ISRB did not abuse its discretion in considering the psychological evaluation.

Fourth, Fletcher argues that the ISRB abused its discretion in considering the psychological evaluation because it contains inaccuracies. But the inaccuracies he claims relate to his correctional history, and the ISRB gave him the opportunity to submit a written statement after the

parolability hearing to contest the psychological evaluation. Fletcher did not submit such a statement. The ISRB did not abuse its discretion in considering the psychological evaluation.

Fifth, Fletcher argues that the ISRB abused its discretion in basing its decisions on evidence that was "erroneous or misleading or even petty." Pet. at 4. Fletcher does not show that the ISRB abused its discretion in finding that he was not rehabilitated and, therefore, in adding to his minimum term of confinement. *In re Pers. Restraint of Ecklund*, 139 Wn.2d 166, 176, 985 P.2d 342 (1999).

Sixth, Fletcher argues that the ISRB violated its duty to take into account the sentencing recommendations of the trial court and the State. But he does not demonstrate any such violation. Fletcher's ISRB file, which the ISRB considered in its December 2017 decision, contains the sentencing recommendations of 7.5 years from the sentencing court and 20 years from the State, respectively. He also argues that the ISRB violated its duty under RCW 9.95.009(2) to make his minimum term reasonably consistent with the SRA sentencing range for his crime. But the ISRB must balance that duty with the duty to determine if the offender is fit for release on parole. *Addleman*, 151 Wn.2d at 775. Given the lack of progress that Fletcher had made toward becoming fit for release on parole, the ISRB did not abuse its discretion in setting his minimum term.

Seventh, Fletcher argues that the ISRB abused its discretion when it did not give adequate written reasons for adding 60 months to his minimum term. Again, given the lack of progress that Fletcher had made toward becoming fit for release on parole, the ISRB did not abuse its discretion in adding 60 months to his minimum term.

Finally, Fletcher argues that the ISRB gave him a disproportionate sentence when it added 60 months to his minimum term. But until it is satisfied that Fletcher is parolable, the ISRB is

required to extend his minimum term of confinement. *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 143, 866 P.2d 8 (1994). Because the ISRB did not find Fletcher parolable, it did not abuse its discretion in adding to his minimum term.

Fletcher's challenges to the ISRB's December 2017 parolability decision fail. Therefore, we deny his PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

LEE, J.

We concur:

MAXA, C.J.

MELNICK, J.