# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>DAVID WAYNE EVANS,<br><br>                    Petitioner. | No. 54254-4-II<br><br>UNPUBLIHSED OPINION |

LEE, C.J. — In his personal restraint petition (PRP), David W. Evans asks this court to remand this matter to the Indeterminate Sentence Review Board (ISRB) and direct the ISRB to release Evans with community custody conditions. Evans argues that the ISRB abused its discretion by 1) determining that Evans was more likely than not to reoffend if released and 2) failing to discuss any conditions associated with release.

We hold that the ISRB did not abuse its discretion by 1) determining that Evans was more likely than not to reoffend if released and 2) not discussing any conditions associated with release. Accordingly, we deny Evans' personal restraint petition.

FACTS

A.    INCIDENTS LEADING TO CURRENT CONFINEMENT

Between 2001 and 2004, David Evans, who coached a children's soccer team, sexually assaulted two male children, ages 11 and 12, who were on the team. In 2005, Evans pled guilty to one count of rape of a child in the first degree (count I), one count of child molestation in the first degree (count II), and one count of communication with a minor for immoral purposes (count III). Evans was sentenced to confinement for 144 months to life for count I, 89 months to life for count II, and 365 days for count III.

B.  PRIOR RISK-RELATED CRIMINAL CONDUCT

In 1997, Evans was charged with child molestation in the first degree and child molestation in the second degree based on allegations that Evans sexually abused his youngest son when his son was 10-13 years old. Evans was acquitted by a jury of both counts. Evans' oldest son reported that he was also sexually assaulted by his father beginning at the age of 3, but no charges were filed. Evans has since admitted during sex offender treatment to sexually abusing both of his sons.

Evans' ex-wife told authorities that Evans had been suspected of several incidents of inappropriate contact with minors that were in their care or involved in the church with them. No new charges were filed as a result of these allegations.

C.  SEXUAL OFFENDER TREATMENT ASSESSMENT PROGRAM (SOTAP)

While in prison and beginning in 2014, Evans participated in a SOTAP. A report was generated on September 28, 2015, which stated that Evans made no observable progress in sexual self-regulation, attitudes supportive of sexual assault, romantic intimacy, social functioning, general self-regulation, and compliance.

At the seventh month of treatment, Evans acknowledged having molested his sons. "Following the revelation that he had, in fact, offended against his children, he became far less stable and responsible. Indeed, his approach to treatment became so erratic that he was considered for termination." Resp't Ex. 4 at 8. Evans also reported two additional unadjudicated minor, male victims at the time of the offenses that led to his confinement. Approximately six weeks after that disclosure, he acknowledged pursuing an inmate half his age based upon sexual desire. "This behavior is completely inconsistent with the façade of treatment compliance and progress that Mr. Evans manufactured for himself. His pursuit of deviant sexual arousal and behavior appears to be

constant and not impacted even by time in prison. Furthermore, Mr. Evans works diligently to keep his behavior covert." Resp't Ex. 4 at 4. Further, the report noted, "Evans has repeatedly used his position of power and authority to further his sexual offending." Resp't Ex. 4 at 10.

The report further noted Evans' "utter lack [of] empathy for the victims of his sexual offending behavior." Resp't Ex. 4. at 5. Evans attributed responsibility for his sexual offending to loneliness and to the mother of the first victim for leaving the child with him. "Evans attempted to avoid culpability for offending while at the same time stating repeatedly that he accepts full responsibility for his behavior." Resp't Ex. 4 at 5. Also, there was no indication that Evans saw his behavior as violent or extreme, and he chose to not cooperate with sex offender treatment.

The report concluded:

Mr. Evans made minimal progress in treatment. He was covert and dishonest about his offending history through the seventh month of treatment. He continued to engage in sexually inappropriate behavior on the living unit through his final day of treatment. Mr. Evans has a longstanding history of sexually deviant and sexual offending behavior. He has an equally long history of keeping this behavior covert and lying about the behavior when confronted.

Resp't Ex. 4 at 11.

D.     END OF SENTENCE REVIEW COMMITTEE (ESRC)

In 2015, the ESRC recommended a level III risk level classification because Evans used his position of trust to gain access to the victims. Although Evans' actuarial risk scores were "low" and "low/moderate," the ESRC found that his pattern of behavior increased the risk for sexual re-offense. Resp't Ex. 5 at 1. A level III risk level classification means that there is a high risk of sexual re-offense within the community at large. In 2018, the ESRC found that the level III recommendation remained unchanged.

3

E.      .420 HEARING

The ISRB held a .420 hearing on February 19, 2019.

Melinda Murray, Evans' counselor, testified that Evans was able to complete the "CBT Aftercare" and "Bridges to Life," programs. Resp't Ex. 7 at 4. Evans started working full time in the prison as a laundry machine operator and had been maintaining stable employment while receiving positive performance evaluations. Evans also participated in a LGBTQ support group. Evans' plan, if found releasable, was to look for transitional housing.

Blane Leal, a sex offender treatment specialist, testified that he had worked with Evans in the LGBTQ support group. In the group, Evans talked about his deviant sexual interest and lack of concern for others. But Evans had said that he had found ways of mitigating those problems.

Evans testified that the Bridges to Life program really "opened my eyes to as a, what I had done to my victims." Resp't Ex. 7 at 6. Evans also completed the "Making it Work" program. Resp't Ex. 7 at 5. Evans testified that he understood the pain he caused his victims. Evans wrote to his children and apologized. Evans told his children that the reason he molested them was he was "struggling with who I really was as a person." Resp't Ex. 7 at 10. "[I]t was just the feelings of wanting to be with a male. It had nothing to do with, you know, the young children. It had to do with just being more, just wanting to be with a male and so those, they were the closest, you know, to me and it was safe." Resp't Ex. 7 at 11. Evans' children sent letters of support to the ISRB. His children stated that they have forgiven Evans and moved on.

Evans also testified that he had three affairs with men while he was married. Evans claimed that he molested the children because he was afraid of people finding out he was gay. Evans stated that he molested his sons and other male children because he wanted to be with a male and he "felt

more safe with [minor children] that they would not say anything." Resp't Ex. 7 at 13. Evans further testified that he just wanted to be with a male. He "wasn't afraid that the gay men were not going to say anything." Resp't Ex. 7 at 14. Rather, he was concerned with losing his family. Evans admitted to having a deviant attraction to teen males but did not acknowledge the attraction to younger males. Evans also stated, "I don't ever want to hurt another child again." Resp't Ex. 7 at 20.

E. ISRB'S RULING

The ISRB determined that

> [b]ased on the burden of proof set out in RCW 9.95.420 and the totality of evidence and information provided to the Board, the Board does find by a preponderance of the evidence that Mr. Evans is more likely than not to commit a sex offense if released on conditions. Consequently, the Board finds Mr. Evans not releasable and adds 36 months to Mr. Evans's minimum term.

Resp't Ex. 3 at 1-2.

The ISRB found that Evans was not releasable because 1) he was aggravated to a risk level III by the ESRC, 2) he lacked insight into his offending behavior even after treatment, and 3) he did poorly in the SOTAP.

The ISRB noted that Evans had completed the SOTAP Aftercare, Bridges to Life, and Making it Work programs. He worked as a laundry machine operator and participated in the Twin Rivers Unit LGBTQ support group. And Evans had incurred no serious infractions since his last hearing.[1]

---

[1] Evans' last hearing was on January 5, 2016. The ISRB found Evans not releasable and added 36 months to his minimum term. The Board recommended that Evans participate in Thinking for a Change or other programming that may help him to be more open and honest. Evans did not appeal the ISRB's decision.

The ISRB further noted:

Mr. Evans stated he has support from his children all of whom are adults now. He claims he wrote a letter of apology to his two sons whom he had molested previously. (He was tried and acquitted of this in . . . 1997)[.] He said he told his sons that he had been struggling with "who he really was" as a person (his sexuality) at the time. Mr. Evans stated he offended against his two sons because he was interested in knowing what it was like to be with a "male". In practically his next breath he admitted he had been involved in homosexual affairs during his marriage at least three different times. He seemed to reason that it was more threatening to be found out for "being gay" by being sexual with a grown man that [sic] it did to be involved sexually with a minor male. He said felt safer with the minor aged males. He continuously blamed his involvement with the boys on his own sexual confusion. He denied he had a deviant sexual attraction to minor aged males which this Board finds disingenuous. He maintained the sex wasn't his main focus. He later admitted that he had an attraction to "teen" males. He was reminded most of his victims were not yet teens before he started touching them. He said he now "embraces who he is as a gay man" as if this alone has solved his problem.

Mr. Evans offended against those closest to him. He shows little remorse other than to repeatedly state, "I don't ever want to create another victim". Mr. Evans minimizes his behavior and verbalizes little insight into his behavior. He has completed the SOTAP and Aftercare. He did very poorly in the core program and he was about 2/3 of the way done before he even admitted having offended against his sons. He has at least four minor male victims yet struggled to admit he had deviant sexual attraction to them. He remains too high of a risk for sexual re-offense to consider him for release at this time.

Resp't Ex. 3 at 4-5.

Given the ISRB's determination that Evans was more likely than not to reoffend and not releasable, the ISRB added 36 months to Evans' minimum sentence.

Evans filed this PRP.

ANALYSIS

A.    LEGAL PRINCIPLES

To prevail on a PRP challenge of an ISRB decision, a petitioner must show that he is under restraint and that his restraint is unlawful. RAP 16.4(a). Restraint is unlawful when "[t]he

6

conviction was obtained or the sentence or other order . . . was imposed or entered in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(2). This court has three available options when reviewing a personal restraint petition: (1) deny the petition, (2) transfer the petition to a superior court for a full determination on the merits or a reference hearing, or (3) grant the petition. RAP 16.11(b); RAP 16.12; *In re Yates,* 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

The burden rests with the petitioner to prove the ISRB abused its discretion. *In re Pers. Restraint of Addleman*, 151 Wn.2d 769, 776, 92 P.3d 221 (2004). "The ISRB abuses its discretion when it fails to follow its own procedural rules for parolability hearings or acts without consideration of and in disregard of the facts." *In re Pers. Restraint of Dyer*, 157 Wn.2d 358, 363, 139 P.3d 320 (2006). "Reliance upon 'speculation and conjecture' with disregard of the evidence also constitutes an abuse of discretion." *In re Pers. Restraint of Dyer*, 164 Wn.2d 274, 286, 189 P.3d 759 (2008) (quoting *Dyer*, 157 Wn.2d at 369.).

RCW 9.95.420(3)(a) states, in relevant part:

> The board shall order the offender released, under such affirmative and other conditions as the board determines appropriate, unless the board determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the offender will commit sex offenses if released. If the board does not order the offender released, the board shall establish a new minimum term as provided in RCW 9.95.011.

RCW 9.95.420(3) creates a presumption in favor of release and requires the Board to release the offender unless it finds the offender likely to commit sex offenses upon release. *In re Pers. Restraint of McCarthy*, 161 Wn.2d 234, 241, 164 P.3d 1283 (2007). RCW 9.95.420(3) also creates a limited liberty interest by restricting the Board's discretion and establishing a presumption that

offenders will be released to community custody upon the expiration of their minimum sentence.

*Id.*

B.      LIKELIHOOD OF REOFFENSE

Evans argues that the evidence relied upon by the ISRB was insufficient to support the conclusion that Evans is likely to reoffend. Evans contends that the ISRB did not rely on or cite to any individualized risk assessment instrument, so there was no affirmative evidence that Evans presented a risk to reoffend. Evans also contends that the second and third factors relied on by the ISRB are premised on a presumption of reoffense rather than a presumption of release. Further, Evans argues that the ISRB completely failed to acknowledge any positive factors.

Under WAC 381-90-050,

> (1) . . . [T]he hearing cannot be held unless the board has received:
> (a) The results from the end of sentence review process;
> (b) Recommendations for conditions of community custody from the department.
>
> . . . .
>
> (4) In making a release decision the board may also consider:
> (a) The length of time necessary for the offender to complete treatment and programming;
> (b) The offender's failure to participate in required evaluations;
> (c) The offender's proposed release plan; and
> (d) Other pertinent information.

Under WAC 381-90-140, "[a]ll relevant information shall be admissible." Under WAC 381-90-150:

> A list of factors that the board may consider includes, but is not limited to:
> (1) Refusal to participate in available programs or resources designed to assist an inmate to reduce the risk of reoffense (e.g., stress and anger management, victim awareness, substance abuse treatment, sex offender treatment).
> (2) Serious and repetitive disciplinary infractions during incarceration.

8

(3) Evidence of an inmate's continuing intent or propensity to engage in sex offenses.
(4) Statements or declarations by the inmate of intent not to comply with conditions of community custody.
(5) End of sentence review determination based on actuarial assessments identifying risk to sexually reoffend.

Here, the ISRB denied Evans' release based on the recommendation from the ESRC, Evans' lack of insight into his offending behavior even after treatment, and his poor performance in the SOTAP. The recommendation from the ESRC is a requirement under WAC 381-90-050. The ESRC recommended a level III risk level classification because Evans used his position of trust to gain access to the victims, and this pattern of behavior increased the risk for sexual reoffense. The risk level classification was based, in part, on actuarial risk scores. Evans received the same result in both 2015 and 2018. Thus, contrary to Evans' assertion, the ISRB did rely on affirmative evidence that Evans presented a risk to reoffend.

The ISRB may also consider the refusal to participate in available programs like sex offender treatment and the inmate's continuing propensity to commit sex offenses. WAC 381-90-050; WAC 381-90-150. While Evans did participate in sex offender treatment, the SOTAP report noted that Evans made minimal progress in sexual self-regulation, attitudes supportive of sexual assault, romantic intimacy, social functioning, general self-regulation, and compliance. Even though Evans admitted to molesting his sons later in treatment, his behavior became more erratic after his admission, and he was considered for termination from the treatment program. There was no indication that Evans saw his behavior as violent or extreme. Evans also pursued an inmate half his age based upon sexual desire and continued his predatory behavior. The report stated that Evans chose to not cooperate with sex offender treatment. Thus, while Evans did participate in

treatment, he did not cooperate and made no observable progress in critical aspects of treatment like sexual self-regulation, which would reflect on his behavior if he were to be released. Further, his behavior in prison showed a continued propensity to engage in sex offenses.

Under WAC 381-90-050(4)(d), the ISRB was allowed to consider "other pertinent information." The ISRB considered Evans' testimony. In his testimony, Evans denied that he had a deviant attraction to minors and claimed that he molested the male children because he was afraid that he would be found out as being gay. Evans testified that he molested his sons and other male children because he wanted to be with a male and he "felt more safe with [minor children] that they would not say anything." Resp't Ex. 7 at 13. However, Evans also testified that he had three affairs with men during the time he was molesting his sons. He further testified that he "wasn't afraid that the gay men were not going to say anything." Resp't Ex. 7 at 14. Rather, he was concerned with losing his family.

Evans also argues that the ISRB completely failed to acknowledge any positive factors. Contrary to Evans' argument, the ISRB did note Evans' progress. The ISRB noted that Evans completed the SOTAP Aftercare, Bridges to Life, and Making it Work programs, and that he worked as a laundry machine operator and participated in the Twin Rivers Unit LGBTQ support group. The ISRB also noted that Evans had incurred no serious infractions since his last hearing.

Evans relies on *Matter of Brashear*, 6 Wn. App. 2d 279, 430 P.3d 710 (2018), to argue that the ISRB's decision "failed to cite to sufficient evidence to overcome the presumption of release." PRP at 5. In *Brashear*, the petitioner, Brashear, was convicted of first degree murder, first degree assault, and first degree burglary. 6 Wn. App. 2d at 281. Under RCW 9.94.730, a person convicted of one or more crimes committed prior to turning 18 may petition the ISRB for early release after

serving 20 years of confinement. *Id.* at 281-82. Early release under RCW 9.94.730(3) is presumptive unless the ISRB determines that, despite conditions, it is more likely than not that a person will reoffend. *Id.* at 287. The court reversed the ISRB's decision to not release Brashear because

> [r]ather than focusing on the statutory presumption of release, her awareness of her crimes, her changed behavior, her assessed low risk to reoffend, and appropriate release conditions, the ISRB relied on Brashear's underlying crimes, the impact of those crimes, and the small portion of her sentence served in denying her petition.

*Id.* at 288.

Here, unlike in *Brashear*, the ISRB focused on Evans' lack of awareness of his crimes, his lack of changed behavior as demonstrated by his performance in SOTAP, and his high risk to reoffend as determined by the ESRC. Because the ISRB followed its procedural rules and based its decision on the relevant facts, rather than speculation and conjecture, the ISRB did not abuse its discretion in finding by a preponderance of the evidence that Evans was more likely than not to commit a sex offense if released on conditions. Therefore, the ISRB did not abuse its discretion in finding by a preponderance of the evidence that Evans was more likely than not to commit a sex offense if released on conditions and was not releasable.

C.    CONDITIONS

Evans argues that "like in *Brashear*, the ISRB also failed to discuss any conditions associated with release and why, despite appropriate conditions, he would be likely to reoffend." PRP at 8. While the court in *Brashear* did state that "[t]he ISRB did not consider any conditions in reaching its decision," *Brashear* is inapposite because at the time of the ISRB determination, Brashear acknowledged her role in her crimes and described the offense with no distortions or

denials about her role in killing the victim. 6 Wn. App. 2d at 287-88. The ISRB recognized Brashear's complete shift in behavior after struggling her first 10 to 11 years in prison. *Id.* at 287-88.

Here, Evans showed very minimal insight into his offending behavior and did not fully acknowledge his crimes or acknowledge any deviant sexual attraction to young male children, but rather blamed his behavior on his sexuality. And the ESRC determined that Evans displayed a high risk of reoffense. Further, the ISRB stated that "the Board does find by a preponderance of the evidence that Mr. Evans is more likely than not to commit a sex offense *if released on conditions*."[2] Resp't Ex. 3 at 1-2 (emphasis added). Therefore, Evans has not met his burden to show that the ISRB abused its discretion, and Evans' argument fails.

We deny Evans's personal restraint petition.

---

[2] Evans argues that the ISRB failed to discuss any conditions associated with release and why, despite appropriate conditions, he would be likely to reoffend. Even if the ISRB erred, any error is harmless.

When a statutory violation occurs, the stringent standard of proving "'harmless error beyond a reasonable doubt'" used for constitutional violations is inapplicable. *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980) (quoting *State v. Nist*, 77 Wn.2d 227, 461 P.2d 322 (1969). In such cases, we apply the rule that an error is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the proceeding would have been materially different. *See id*.

Here, the overwhelming evidence shows that despite treatment, Evans continues to minimize his conduct and verbalizes little insight into his offending behavior. And Evans continues to deny that he has any deviant sexual attraction to young male children, continues to blame his anticipated negative reaction from others to his being gay as the reason for his sexually offending against his own sons and other young male children. Given the information before the ISRB, even if the ISRB erred by not discussing any conditions upon release, the outcome of the hearing would not have been materially different if the ISRB had listed out conditions upon release because the overwhelming evidence showed that Evans was not releasable.

No. 54254-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Sutton, J.

Glasgow, J.